### George Rogers Clarke *v.* John M'Intire.

AN action of debt, on a bond in the penalty of 500*l.* was brought to *April* term, 1792. An action had been brought, on the same bond, in *Ohio* county, and discontinued. The bond was for the delivery of flour, and was given as the consideration of a purchase of a tract of land in *Ohio* county, claimed by virtue of an actual settlement and a military warrant. The purchase was made 17th *July*, 1786, the date of the bond. The defendant pleaded payment, with leave to give want of consideration in evidence. On this plea, the defendant shewed an exemplification of a patent, dated 11th *October*, 1783, from the state of *Virginia* to *Moses Chapline* for 500 acres, surveyed 11th *December*, 1781, on a military warrant, dated 19th *March*, 1781. Evidence was also given, from the surveyor, of a survey for *David Rogers*, on a certificate of an actual settlement, prior to that of *G. R. Clarke*, of 400 acres ; and that these two surveys took up all the claim and survey of *Clarke*, except a long narrow strip of about 50 acres. *Moses Chapline* is in possession of his survey, believes his title the best, and will maintain it. The heirs of *David Rogers* also continue their claim and possession. *Clarke* had no military warrant entered ; nor had he any certificate of settlement, till *November*, 1786, when on an application in his name by *M'Intire*, the court of *Ohio* county ordered a certificate to be granted of a settlement in 1773.

*Brackenridge,* argued for the defendant.—*Ross* and *Bradford,* for the plaintiff.

PRESIDENT. It has been objected, by the counsel for the plaintiff, that we have no authority to try the title of land in *Virginia. Directly,* it is true, we have not. But when it comes *incidentally* before us, in a case over which we have jurisdiction, the *principal* draws after it all its *incidents.* It is indifferent where the land lies, be it in *Turkey* or in *China,* the right to it comes incidentally before us, in the trial of a personal action, for the trial of which its examination is necessary : therefore we have authority to examine it.

1794.

1794.

But who brought the caufe here ? The plaintiff was, at the time of the contract, and of bringing the fuit, a citizen of *Virginia*, and is now a citizen of *Kentucky.*—— The defendant was then, and is yet a citizen of *Virginia*. The contract was made in *Virginia* refpecting land in *Virginia*. The plaintiff arrefted him in *Pennfylvania*, and would ufe his own arts, to deprive the defendant of the advantage of his defence. Had the caufe been tried in *Virginia*, the courts there could try the right ; and this objection would not have exifted. Had the caufe been tried in *Virginia*, there is a court of Chancery there, to which the defendant could have applied for an injunction, to ftay the plaintiff from execution, till he could try the title, and fhew whether he had value or not for the bond. In *Pennfylvania*, there being no court of Chancery, or power of injunction, defendants are at liberty to give want of title or any other confideration in evidence. The objection, that the land is in *Virginia*, comes with a very ill grace, on the part of a man who has himfelf brought the caufe here, if he would deprive the defendant of the advantages, which he could have had where he and the plaintiff lived, and where the contract was made, and the fubject of difpute lies.

We endeavoured to reduce the matter to the fame fhape, as if the caufe had been tried in *Virginia* under the power of an injunction. We propofed a judgment for the plaintiff, with a ftay of execution till the title could be tried in *Virginia*. But the plaintiff's counfel rejected this propofal.

It will be attended to, that, at the time of the contract, there was a patent, for *Mofes Chapline*, for part of the land furveyed by *M'Intire* on this claim. If we were excluded from examining *Virginia* titles ; is not this conclufive evidence, that *Chapline* has the title ? This patent, being previous to *Clarke's* certificate on *Act of Virginia, 1779.* his fettlement, excludes the certificate; for the authority of granting certificates was for unpatented land.

It will alfo be attended to, that *Clarke*, at the time of the contract, reprefented that he had a military warrant located on the fpot. There is evidence from the furveyor of the diftrict, that no fuch warrant was or is located. The queftion then is, Did *M'Intire* take his chance of the land, knowing all the circumftances ? Or

did *Clarke* fell, and *M'Intire* buy a title reprefented or fuppofed good for a competent price ? The prefumption is ftrong, that it was intended on both fides, to buy and fell a good title. Whether the fact be fo or not, you will judge from all the circumftances.

1794.

If a fuppofed good title was bought, the next queftion is, For how much land ; and whether *M'Intire* has got all that was intended as the worth of his money ? The value of whatever part he has not got of what he ought to have got, you will, under this plea, confider as paid of the bond.

As to *David Rogers*' title, the defendant has not made a clear cafe. He ought to have fhewn a good title againft himfelf. He has only fhewn prefumption, the weight of which, confidering the propofition which has been made to the plaintiff and rejected, you will judge. If any of the land fold be within *Mofes Chapline*'s furvey, you ought to deduct in proportion.

The jury found a verdict for the plaintiff for 25*l*. 5*s*. 1*d*. and cofts of fuit ; with this further, that the defendant fhould profecute for the recovery of the whole land, and, if recovered, pay the contents of the bond.

This was compelling the plaintiff to accept the propofition, which had been made. The 25*l*. 5*s*. 1*d*. found for him, was for the 50 or 58 acres not included in either of the furveys of *Chapline* or *Rogers*.

*Rofs*, two days after, on the part of the plaintiff, moved for a new trial, on a cafe ftating the circumftances, and read 3 *Comm.* 390, and the cafe of *Steinmetz v. Curry, Dall.* 234, and argued on the following points.

1. The court left it open to the jury to prefume title to deftroy the title fold, when the action was on a deed, and it became incumbent on the defendant to fhew want of confideration. The *onus probandi* was on him, and he muft fhew it abfolutely, efpecially as he had a patent on the title fold and the certificate afterwards obtained from the court of *Ohio* county. The jury ought to have prefumed no title, to wit, no certificate, becaufe none was fhewn ; and the court ought to have fo directed them, agreeably to the decifion of the court of *Weftmoreland* county in the cafe of *Carnahan v. Hall*.

*Ante p. 127*

PRESIDENT. That cafe was decided on an exception to evidence. Here the evidence was admitted without exception.

*Rofs.* If the court, on exception, would have excluded the teftimony, they ought pofitively to have directed the exclufion of its effect.

2. From the poffible ignorance of foreign titles, there may be great inconvenience in this court judging of any foreign title.

3. We were furprifed by haftily fuffering the evidence to go to the jury, mixed with proper teftimony.

*Brackenridge*, for the defendant.

1. The court did direct the jury, that it was not the beft evidence; and left the prefumption of the exiftence, and the prefumption of the want, of the beft evidence of title to operate againft each other; that the jury might weigh both, and decide accordingly.

2. The *lex loci* is the ground on which every contract muft be determined; yet a contract may be fued on any where. So, whatever be the confideration of a bond, *value* of that confideration may be examined by the court in which a recovery on it is demanded.

3. If any furprife had been, juftice has been done.— There certainly does exift a good title, a patent, in the affignee of *David Rogers.* But through ignorance of the name, which we now know, we could not obtain it before the trial, and I did not think of the certificate and entry.

The court took time to confider it: and the cafe has never fince been mentioned.